# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 07-1205


**CHANDA HESTER**

**VERSUS**

**JOHN T. NING, M.D., ET AL.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NO. 74,052, DIV. B
HONORABLE JOHN C. FORD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## MARC T. AMY
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Oswald A. Decuir, Jimmie C. Peters, and Marc T. Amy, Judges.

**AFFIRMED.**

**Marc W. Judice**
**Judice & Adley**
**Post Office Drawer 51769**
**Lafayette, LA   70505-1769**
**(337) 235-2405**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Louisiana Medical Mutual  Insurance Company**
    **John T. Ning, M.D.**

**R. Scott Iles**
**Post Office Box 3385**
**Lafayette, LA   70502**
**(337) 234-8800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
    **Chanda Hester**

AMY, Judge.

The plaintiff alleged that the defendant urologist rendered substandard care in the treatment of her complaints. The trial court found in favor of the defendant following a bench trial. The defendant's exception of prescription was found moot due to the ruling on the merits. The plaintiff appeals. For the following reasons, we affirm.

## Factual and Procedural Background

The plaintiff, Chanda Hester, began treatment with Dr. John T. Ning, a urologist, on January 24, 2001. She complained of blood in the urine, painful urination, and stress urinary incontinence. She reported having had a hysterectomy with cervical cancer as well as a history of a vaginal vesical fistula.

On March 7, 2001, Dr. Ning examined Ms. Hester under anesthesia and performed cystourethroscopy, a bilateral retrograde pyelogram, a bladder distention, and also a biopsy. Dr. Ning's postoperative diagnosis was gross hematuria and interstitial cystitis. Ms. Hester's symptoms persisted and, according to her testimony, escalated for a period after the procedures.

Dr. Ning ultimately recommended that Ms. Hester undergo a right urethral reimplant as her complaints continued. In June 2001, Ms. Hester obtained a second opinion from another urologist, whose notes reflect that he "had no objection" to her allowing Dr. Ning to perform the right urethral reimplant. Although she returned to Dr. Ning, she did not have the procedure performed. By April 2001, Ms. Hester reported that her symptoms had lessened.

In February 2004, Ms. Hester began treatment with Dr. William Kubricht for both vaginal and urinary complaints. After diagnostic testing, Ms. Hester was placed on medication. She remained under Dr. Kubricht's care and, in December 2005

underwent cystoscopy, which revealed inflammatory polyps. She was treated with antibiotics.

On March 3, 2004, Ms. Hester filed a complaint, seeking a medical review panel due to her allegations of substandard care and treatment by Dr. Ning. Thereafter, on March 3, 2005, Ms. Hester filed suit against Dr. Ning and his insurer, Louisiana Medical Mutual Insurance Company, alleging that the physician performed inadequate clinic and/or laboratory work for the diagnoses reached and the procedures performed. The defendants filed an exception of prescription, noting that Ms. Hester's final appointment with Dr. Ning was in April 2001, yet suit was not filed until March 2005.

After a bench trial, the trial court determined that Ms. Hester failed to establish a breach of the standard of care[1] and found the exception of prescription to be moot.

---

[1] In written reasons for ruling, the trial court explained:

> This is a medical malpractice case wherein the standard of care is established by Statutes R.S. 9:2794 and R.S. 40:1299.39.
>
> Two doctors testified as medical experts in this case.
>
> Dr. William S. Kubricht testified, at page 11, lines 13 through 25, page 12 lines 1 through 25, as follows:
>
> "Q.  Would you agree that Dr. Ning's use of the bilateral retrograde pyelogram and biopsies were appropriate?
>
> A.  He performed those, I believe, because of a history of gross hematuria, if I understand her initial story correctly from reviewing his records. A cysto with bilateral retrogrades is a method to determine if - it is a method to determine intravesical and intralumenal sources of hematuria.
>
> Q.  So you would agree that that would be appropriate treatment, considering the symptoms?
>
> A.  Yes.
>
> Q.  Do you agree that Dr. Ning's testing did not indicate that she was suffering from interstitial cystitis?
>
> A.  No.

Ms. Hester appeals and assigns the following as error:

---

Q. Why not?

A. Well, a patient presents to him, and I'll have to refer to - interstitial cystitis is a diagnosis of exclusion which requires one to rule out several features before they can come to that conclusion. Performance of a cysto and a retrograde is appropriate to assess hematuria, blood in the urine. In an individual that's passing gross blood, you must rule out a renal etiology of the bleeding. So if your work up for hematuria is a cystoscopy and a retrograde, that's appropriate, but it's not a complete evaluation. So no renal source of the bleeding has been identified. So we still, at this point, have no awareness of could she have referred pelvic pain from her kidneys as the source, an abnormality causing it. So that's why, in my opinion, I" . . .

and at page 16, lines 21 through 25 and page 17, lines 1 through 12, as follows:

"Q. Would you agree that no damage could have resulted from the procedures, treatments and/or testing performed by Dr. Ning upon Ms. Hester?

A. She had a - - the only thing that would be concerning is hydro distension of the bladder is a procedure designed intuitively to disrupt neuromuscular junctions and alleviate urinary symptomatology and diagnose it. So the unknown lies in what, if any, long term effects come from that. Aside from that, the retrograde is very commonly done and not considered to be a detrimental procedure. She had a biopsy performed, which is pretty routine and typical, not thought to be harmful."

Dr. Mark Posner testified at page 25, lines 20 through 25 and page 26, line 1, as follows:

. . . "But in my opinion, his evaluation of her symptoms, his biopsy and the pathologic evaluation of the biopsy, was a reasonable way to diagnose a patient with interstitial cystitis, except that I would have preferred to see an actual urine culture for the patient."

page 19, lines 5 through 9, as follows:

"Q. All right, sir. But as of the procedure that was done by Dr. Ning on the 8th of March, you have no disagreements with the procedure itself that was done?

A. I do not."

and page 23, lines 7 through 10, as follows:

Q. The use of the bilateral retrograde pyelogram and the biopsies performed by Dr. Ning, in your opinion, were appropriate?

A. Sure, yes, sir."

Considering the testimony of these two experts, the Court finds that defendant did not breach the standard of care. The exception of prescription is, therefore, moot. Let there be judgment for defendant.

In a medical malpractice case where Lammico and John T. Ning, M.D. waived the medical review panel, faced a subsequent treating urologist critical of the doctor's care, and called an expert urologist regarding the standard of care who testified adverse to the defendant doctor, the trial judge erred in finding that the plaintiff failed to prove that the defendant breached the standard of care expected for a urologist or award damages.

**Discussion**

Ms. Hester contends that the trial court was clearly wrong in determining that she failed to prove that Dr. Ning breached the applicable standard of care. She appears to argue, in particular, that Dr. Ning breached the standard of care in scheduling her for the examination under anesthesia and ensuing procedures without first obtaining a urine culture and urine cytology. She points to testimony from the defendant's expert urologist, Dr. Mark Posner, for this point.

Louisiana Revised Statutes 9:2794 provides, in pertinent part:

A. In a malpractice action based on the negligence of a physician licensed under R.S. 37:1261 et seq . . . the plaintiff shall have the burden of proving:

(1) The degree of knowledge or skill possessed or the degree of care ordinarily exercised by physicians . . . licensed to practice in the state of Louisiana and actively practicing in a similar community or locale and under similar circumstances; and where the defendant practices in a particular specialty and where the alleged acts of medical negligence raise issues peculiar to the particular medical specialty involved, then the plaintiff has the burden of proving the degree of care ordinarily practiced by physicians . . . within the involved medical specialty.

(2) That the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence, along with his best judgment in the application of that skill.

(3) That as a proximate result of this lack of knowledge or skill or the failure to exercise this degree of care the plaintiff suffered injuries that would not otherwise have been incurred.

*See also Fusilier v. Dauterive*, 00-0151 (La. 7/14/00), 764 So.2d 74. On appeal, we consider the trial court's determination that Ms. Hester failed to establish these

factors under the manifest error standard of review. *Id.* After review, we find that the record supports the trial court's determination. In fact, the vague nature of Ms. Hester's claim makes discussion of the evidence in light of the burden of proof challenging insofar as it is difficult to determine what, precisely, she identifies as the standard of care, how Dr. Ning breached that standard, and how the breach resulted in injuries.

Ms. Hester indicates in her brief that the procedures performed under anesthesia by Dr. Ning were unnecessary and exacerbated her symptoms. However, her physician, Dr. Kubricht, made no reference to this as a breach of the standard of care. While the defendant's expert urologist, Dr. Posner, explained that he would have performed further diagnostic testing prior to the procedures performed under anesthesia, it is unclear whether the procedures would have been indicated after these diagnostic tests. Dr. Posner noted his preference for performing a urine culture, but also opined that the "evaluation of her symptoms, his evaluation of her symptoms, his biopsy and the pathologic evaluation of the biopsy, was a reasonable way to diagnose a patient with interstitial cystitis[.]"

Further, while Dr. Posner testified that the procedures performed by Dr. Ning could, for a short duration, exacerbate the symptoms of someone suffering from interstitial cystitis, as diagnosed by Dr. Ning, his testimony does not indicate that it did so in this case or that the procedures were a breach of the standard of care. He noted that the procedures could, however, also improve symptoms and could be used for evaluation purposes.

Ms. Hester also asserts that Dr. Ning recommended a right urethral reimplant without adequate testing. However, and although the physician Ms. Hester chose for

5

a second opinion approved of her proceeding with the surgery, she did not have the procedure performed. Notwithstanding any deficiencies in Ms. Hester's burden of proof as to Dr. Ning's recommendation breaching the standard of care, the record is lacking as to the causation of her injuries insofar as there is no indication that the recommendation caused her further injury or complaints outside of her physical problems.

For these reasons, the trial court's determination that Ms. Hester failed to offer adequate proof of her malpractice claim is not manifestly erroneous.

Like the trial court, we find that this determination pretermits discussion of the defendants' exception of prescription.

## DECREE

For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this proceeding are assigned to the appellant, Chanda Hester.

**AFFIRMED.**

6